The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. Good morning. This is case number 4-24-1627, Ingrid Gardner v. City of Loves Park. Counsel, could we have appearances? First, for the appellant. Yes, hi. Thomas Sotos on behalf of the City of Loves Park, the defendant appellant. Thank you. And for the appellee? Good morning, your honors. Michael Rasak on behalf of the appellee, Ingrid Gardner. Thank you. Mr. Sotos, you may proceed with your argument. Thank you, your honor. Counsel, may it please the court, good morning. My name is Thomas Sotos. I represent the City of Loves Park, the defendant appellant. Today we are asking the court to reverse the lower court's finding that the application of the deliberate encounter exception was a question of fact to be resolved by the jury and to rule that as a matter of law, the exception does not apply and the city owed no duty of care to plaintiff Ingrid Gardner. Now, as the court likely noticed in their briefs, the parties frame the sole appellate issue differently. I would like to begin with that divergent framing because I think it demonstrates why ultimately this is a fairly simple appeal that should resolve just as simply in the city's favor. So the issue presented by the city is sort of the standard binary legal question. The city owed Ms. Gardner a duty based on whether, as a legal matter, the deliberate encounter exception either did or did not apply. It's a yes or no for this court to answer. That's how the city frames it. Now, plaintiff offers some argument about this, but it's not her preferred framing. Plaintiff would prefer the court not reach this question and instead decide, as the lower court did, that the deliberate encounter exception presents a question of fact for the jury to decide. That's her issue presented. So why does this matter? On the city's framing, if this is a plaintiff simply does not oppose this with particular vigor. In our opening brief, the city advanced a circuit of authority, namely three decisions. That's Winters, Crespo, and Davis. We argue that those decisions compel a legal finding, that the deliberate encounter exception does not apply to this case. As we note in reply, plaintiff declined to address even one of those cases in her response brief. So we make an argument about concession, but here's the larger point. Plaintiff is inclined to avoid this merits question because it clearly and simply favors the city. Hertz, which we submitted recently, it's the court's most recent pronouncement on the deliberate encounter exception. It came down from the fourth district last month. It demonstrates why this is the case, and it demonstrates it in abundance. There, as here, there was no economic compulsion forcing the route taken. And there, as here, there was no evidence that the plaintiff deliberately encountered the open and obvious defect for any reason other than convenience. That is not enough. Convenience is not enough. The court held there. The court should hold here. Where an alternate path in the form of a grass parkway is readily available, the deliberate encounter exception, it does not apply. So plaintiff's counsel understands that. Plaintiff's counsel is a good lawyer. That's why his hand is somewhat forced here to argue the first order question, whether this is a fact issue for the jury rather than a legal issue for the court. Here's the problem with that framing. Counsel, how do you reach the conclusion that it is only a legal question? So why don't the facts matter? The facts absolutely matter. But the facts here are undisputed. This comes from that. Wait a minute. They're not undisputed. There's an expert that testified that it was reasonable for the person to do what they did so that they didn't have to cross the grass. So the original plaintiff's counsel probably could have prepped the witness better. But you're talking about an aged widow who says, I don't want to walk across that because the grass is bumpy and I don't want to get my feet wet, which the feet wet sounds like convenience. The bumps, which she, I don't know what she meant, whether it was a rise or rise and then a drop, whatever. Why isn't the jury entitled to consider that given their expert's opinion as well? You're right. I appreciate the question. I think there are actually two different answers to this. I think they're both correct. The first answer is that testimonial only came out at trial. And I'll make this point and then I'll get to the second one. So the first point is we in our motion for directed verdict to different trial counsel for both for both counsel on appeal, there was different trial counsel. But in our motion for directed verdict and in our post-trial motion, we asked the court to reverse its summary judgment finding because it was a legal issue. And the only information available to the court. How did you get the reverse of summary judgment after the case has already gone to verdict? Well, that has to do with the fact that this is, I don't want to oversimplify it, but I do think it's simple. That's because the facts at the summary judgment stage were undisputed and it was a pure legal issue there. Now, the lower court found that it was a fact issue that should go to the jury. We believe that was a clear error and it was an abundant error. The reason is because what the court just noted, the testimony about the bumps and the wetness and the expert testimony, that wasn't in the summary judgment record. The summary judgment record was exclusively testimony from Ms. Gardner stating and conceding that she only avoided the grass partway because it was more convenient to take the route that she took through the open and obvious dangerous condition. And she conceded, and this is an important point, that she could have walked through the grass just fine. So that was the only... You found other cases where you've had denial of the motion for summary judgment, denial of GNOV, directed verdict, goes to verdict, plaintiff wins, and then the lawyers say, wait a minute, we want to go back to summary judgment. Explain that to me because I don't think it's simple. I can see that it's not frequent. I do think it's semantics. I do think that we cite a case in our brief called Brunchan. There's a number of cases that start with letter B and they can get kind of confusing, but the case I'm referring to here is Brunchan. And what Brunchan did, it was a very, very similar case to what we have here. That was an open and obvious case. It didn't actually come down to the deliberate encounter exception. And what the court did there is it went back and it looked at the undisputed record and found that it was an undisputed record. And as a result, it was a legal issue for the court to determine. Now, Brunchan doesn't specifically hold. So I don't want to overstate that the court can, it doesn't articulate it the way Your Honor just did, Justice Knapp. It doesn't say that we go back in time and we throw out everything. But what Brunchan does say is where there are undisputed facts about a condition, it is a legal issue. And Mr. Ratzak raised in his response brief that there is an rule that where a summary judgment is denied and it normally blends in to the trial decision, that is the normal rule. But Mr. Ratzak raised the exception. We raised it as well by citing Brunchan that where it's a pure legal issue, they do not merge and they are kept separate. And here, this is my first answer to your question. So here, the facts about the bumps and wetness and the expert testimony, they weren't part of the record at the summary judgment stage. And because that was a pure legal issue, and it should have been adjudicated as a pure legal issue because we don't dispute anything that Ms. Gardner said. I want to make that point very, very clear. What Ms. Gardner has said about the Grass Parkway in this case is our evidence. We are accepting it and we are asking this court to make a finding that the deliberate encounter exception either applied or it did not based on that undisputed record. So that's my first answer that the court can and should and we preserve this throughout our motion. You're talking about the undisputed record at summary judgment stage though, aren't you? Yes, sir. And that's and this is my second answer because I do appreciate that at the trial stage there was more testimony. Now, Ms. Gardner testified that she did not want to go through the Grass Parkway because she didn't want to get her feet wet and there were little bumps. And then an expert. Did you just say little bumps? Yes, sir. Yes. Did she say little bumps or did she say bumps? I believe she said. We'll skip that because that's in the record. Yeah, it's little bumps. I just I just checked it is it is it is little bumps. So we accept that. She didn't want to do that. And then there was expert testimony. Now we discussed this in the brief. The only thing that the expert testified to was that people prefer to walk on plainer surfaces. The expert did not. And I want to be very clear about this. He didn't provide any expert testimony about this grass. And we cite a case. The name is escaping me. And I apologize. But there is a case in the brief. And it mentions the generalized expert testimony is not useful for determining these sorts of questions, for helping to try or fact. And that's all this was. This was an expert who was asked a question and said, well, as a general matter, people prefer to walk on flat, plainer surfaces. This is actually what led to some of the discursion in the briefs about the city of Park Ridge and whether you go to the grass parkways and the sidewalks and it's a different suburb. But that's kind of our point. There isn't any record testimony. There's no record evidence here. There's none from any expert about this grass parkway. So even at the trial stage, when the judge adjudicated the motion for direct verdict and then adjudicated the post-trial motion, the only evidence about this grass parkway was Miss Gardner's concessions about avoiding it out of habit and convenience, and that she could have walked through the grass and that her trial testimony about little bumps and wedges. And what we are asking is the court to make a, we are submitting that that is undisputed evidence. It is an undisputed record and the court can, should, and must adjudicate it as a matter of law because there is a legion of case law saying that this is a question about duty and where there is no dispute about the actual physical condition of the subject property, here the grass parkway, and there is no dispute. The court is required to make a legal finding about that because it's a duty question and that's a question of law. But all of this is, you're saying no dispute, but you're still talking about summary judgment because there is a dispute at trial and you're also talking about the jury seeing the plaintiff. Now, is convenience different for a 21-year-old and a, what, 79 or I don't know? 79 here, your honor, yes. Yeah, I think it's a... Is convenience different? Does it mean something different? I appreciate the question. To a jury, does it mean something different? I think the answer is effectively no. I think Ms. Gardner is a sympathetic plaintiff. I have no ill will toward Ms. Gardner. I wouldn't have expected the jury to have ill will toward Ms. Gardner. What the case law teaches us is that where a person tells us, admits to us, and I would encourage the court to read Crespo, Winters, and Davis, and this court's most recent decision, Hertz, where the person tells us themselves that they're only avoiding an alternate path that is otherwise reasonably available out of convenience, where they concede that. That's not enough to invoke the deliberate encounter exception. I would note in Hertz, that's the court's most recent decision, and that is a Rule 23 order. I don't want to overstate it, but it is the most, for lack of a better word, most cutting-edge law on the issue is Hertz. That was a retiree. I don't know her age, not in the opinion. That was a retiree who also invoked convenience. The difference in all these cases, to Your Honor's point, these cases were decided in the defendant's favor at summary judgment, and they were appealed by the plaintiff. We don't have that postural advantage here, but we do have the truth, the record. I want to return to this to do this expert. There was no counter-expert testimony provided about the plaintiff's service issue. There wasn't any opposing testimony provided about that. Because of that, we can't dispute what that expert said about general preferences for plainer services, because that is what the trial record said. That said, Your Honor, there was no testimony from plaintiff or this expert that this grass parkway needed to be avoided for any reason other than minor convenience. There wasn't any testimony about that. I would submit that that's critical here, because plaintiff carries the burden on a duty question, where it's a legal question. Because we are accepting all acceptance, we are submitting to the court that plaintiff has not and cannot sustain her burden to demonstrate the deliberate encounter exception on this record. We're arguing about the import of what these facts teach. And what the city is submitting, what we would submit to the court, is that what Winters, Crespo, Davis, and now Hertz teach is on a record like this, where you have concessions from the plaintiff herself, but the only reason for avoiding what is otherwise a clear and obvious reasonable alternative path, but the only reason for that is convenience, and that comes from the plaintiff's mouth. And there is no other evidence about the specific alternative path available to her in this case that would have impeded her progress through that path. Again, the only evidence is she didn't want to get her feet wet. Was she cross-examined about what she said at the discovery stage and what she said at trial? She was not, Your Honor. This feeds into my point about this being a question of law for the court to decide, and this is our position. It feeds into my question about how do you get to go back in time and rely upon a dispositive motion that was denied and say, yeah, but we need to consider that. Right, right. But we need to consider it because it's inconsistent with what she said at trial, except what she said at trial was what she said at trial. She had already progressed to that point. Yeah. No, I appreciate it, Your Honor. There are two answers here. Again, I don't want to keep belaboring the point, but the first is that where an issue comes from an undisputed record and it should have been a question of law at the summary judgment stage, that decision does not merge into the trial decision and the verdict. That is a separate decision, and we argued that. We argued for reversal of the summary judgment decision at the directed verdict and post-trial stage that has been preserved. We would request the court do that here because it was a legal issue then. That's the first answer, and Brunchan we believe supports that. The second answer is that at the trial stage, the burden remained with plaintiff to establish that there was a duty, and the only record evidence that we accept is plaintiff's testimony that she avoided the grass because she didn't want to get her feet wet. There were little bumps, and then the expert's testimony about plainer services, and I would submit to the court the deliberate encounter exception. I hesitate to call it rare, but it's close. It is a rarely invoked exception. It is usually in starkly different circumstances than this. Lefevre, which is the seminal case here, that's economic compulsion in the workplace where a person is required to take a specific path lest they lose their job. If we accept these facts, it is still on plaintiff to take that exception from that unique and rare circumstance and apply it to her circumstance. It's her burden, and the burden remains with her, and that testimony we would submit. We don't dispute it. We would suggest that the import of that is insufficient to evoke the deliberate encounter exception. That is the thrust of our arguments, that it was a legal issue at every step, including its summary judgment. The court should go back and adjudicate on the summary judgment record. Even through trial, it remained an undisputed record. We have to accept what they have put forward in order to make that case and that the court should reverse based on their failure to meet their burden of invoking the deliberate encounter exception at that point because it was a legal issue that court was required to make a finding on. It was not for the jury to consider at any point. That's why it comes under de novo review. That's why it's for this court to make a decision now. We would submit that any other finding would effectively abdicate the court's role and give to the jury the duty of making a finding on the duty question that the jury was never supposed to have at any point. It was always for the judge to decide, and because it was always for the judge to decide, it is now for this court to decide. And on this record, it is abundantly clear that this rare and narrow exception does not apply. I know my time is running a bit short here. I want to bring the court's attention to something it just said in Hertz. This comes from paragraph 19 of Hertz. I think this gets at the thrust of what the deliberate encounter exception is all about and what the court wrote that in Illinois for the deliberate encounter exception to apply, there must be quote some sort of driving force causing plaintiff to face the risk. Plaintiff Ingrid Gardner here has admitted in her in her deposition, Ms. Gardner is a just candid person. There's nobody from the city is interested in vilifying Ms. Gardner. Ms. Gardner has provided the evidence she provided. We're asking the court to make a what Ms. Gardner has effectively conceded, not effectively, what Ms. Gardner has admitted that there was no driving force forcing her to risk and hazard the craft curve. What Ms. Gardner has admitted is that she didn't use the grass part way because it was more convenient to just use the other path. And there is black letter law saying that is insufficient to invoke the deliberate encounter exception such that there should be no duty applied. I want to remind the court, we point this out in our brief, two things before I close here and turn it over to Mr. Ratzak. We rely heavily on three cases. I mentioned this in my opening. I'll mention it again. Those are Winters, Crespo and Davis. We think all three are remarkably similar. We think Davis is particular. We talk a lot about Winters in our brief and that is laid out with force. We would encourage the court to look at Davis. In Davis, a woman had to take her teenage daughter to the pediatric ward, just like Ms. Gardner had to go get her mail. People have to go do things. But once she got to the pediatric ward, Planoff and Davis decided to park in a parking lot that was not suitable for motorcycles. She parked there anyway and she got injured when she could have simply used another parking lot that was a minor inconvenience, just like Ms. Gardner here could have simply walked through the grass, even though she said it was a minor inconvenience. These cases are very close to being right on point. Planoff ignored them in the response brief. And the final point, it's somewhat similar. This dispute we have, I don't call it a dispute, Justice Connect, but the issue about question of law versus question of fact, this comes from Planoff's brief. It comes from a case they relied on called Balog. It's a 2012 case in Illinois Appellate Court. Balog does not say that the duty question, the deliberate counter-exception is normally a question of fact. Planoff says it does. That's not true. Balog quotes that from a decision called Simmons. And then in the next breath, Balog says that decision was overruled in a Supreme Court case called Choate. And normally, this is actually a question of law for the court to decide. This question of law, we would ask for the court to review it as such. Thank you. All right. Thank you, Mr. Sotos. You'll have time in rebuttal argument. Mr. Ratzak, you may proceed with your argument. Thank you, Your Honor. Good morning, Your Honors. As I said, my name is Michael Ratzak. I'm here on behalf of the plaintiff appellee, Ms. Ingrid Gardner. And I'll start with the testimony from the expert because I think it fits into what counsel was talking about. It wasn't simply an expert who said generally that people prefer level planar surfaces to walk on. That answer was given in response to a question to the expert about whether the grass was an alternative route. And the answer was no, because people prefer planar level surfaces, i.e., in that case, actually, i.e., a walkway, a paved walkway. And the expert just didn't say that. He said that's the standard for providing access to areas through the ATSM standards. Everybody knows that people prefer that. And if that wasn't enough, I suggest that the common sense jury, common sense instruction that jurors get that tells them to use their common sense would let the jury determine whether or not a 79-year-old woman who they saw in the courtroom, I've not had the pleasure of it here, who they saw in the courtroom, watched her walk, watched her do it, would have some concerns about ever walking on the grass as opposed to going to her mailbox on the route she did, which would, of course, take her to the curb. And the Lefevre case, that didn't come up in the opening argument here, the opening response, but Lefevre very clearly says that whether or not the case should go to the jury, if there's some, if there's going to be a dispute about what the person should have, what a normal, reasonable person would have done in terms of the landowner looking to see what these people would do. And if Lefevre, if Lefevre wasn't enough, the Wright case we cited went further and said, you look to the nature of the active, they look to whether there's a dispute about the nature of the actions of the landowner. You don't look to the person who's using the property. And what we have here is when you look at the city, they knew people in their community had to be older. She's not the only 79-year-old person living in the community. They knew the curb was going to be cracked, the jury found against them on notice, and there's no issue about that. I mean, they always knew that it was going to be noticed because we knew that the patch was temporary. They admitted they knew it would fail, probably within a year. When you combine all that together, the city had to appreciate the risk that one of their residents was going to walk down, prefer not to use the grass, and instead use the walkway. And it's not just me saying that grass might be dangerous. In the Marshall case, as we pointed out in our brief, the court pointed out that even though it was finding that people were intended and permitted uses of the walkway, it still didn't mean that residents of the community could assume that the parkway was a safe place to walk. It pointed out parkways are not always safe places to walk. That's where accidents happen. That's what happened in Marshall. That's where the accident happened. When all that is tied together, it simply created a question of fact for the jury. The trial court spent a great deal of time looking at the facts, talking about the law, and arrived at the same conclusion. That obviously isn't binding on this court, but you have a very detailed post-trail order from this judge, setting everything out that he possibly could. The question about whether or not the jurors, what the jurors should look at was taken care of in the jury instruction that nobody objected to. The jury instructions told the jurors that an issue was whether or not, I have to read it, the defendant could reasonably expect that a reasonable person in Ms. Gardner's position, knowing about the curb, would proceed to encounter it because the advantage of doing so outweighed the risk. That's the law in Lefevre. That's the law that they applied here. That's what the jury got to do. They looked at all the evidence, most of it coming from the plaintiff's side, as everybody has agreed to date, and said it was reasonable for her. We find it was reasonable for her to believe that walking on a paved surface was better. Obviously, as plaintiff's counsel told the jury in closing argument, at some point, she was going to have to walk down that curb. We have winters, if I recall correctly, looking out my window here. There's snow on the ground. She's not going to be walking through the snow. At some point, she's going to be walking down the curb. The question was just which day was this accident going to happen. It happened on this day, unfortunately, and unfortunately, left her with serious injury. Unless the court has further questions, we have both, I think, argued our positions exhaustively in our briefs. That would conclude my argument. We obviously ask that the court affirm Lefevre's verdict. All right. Thank you, Mr. Rossak. Mr. Soto's rebuttal argument. Yes, Your Honor. Thank you. I know I only have five minutes. I want to acknowledge that I understand there was a jury verdict in this case. I understand that we are at a disadvantage. We are asking the court to take that verdict away and to do something that cuts against the grain of what we usually see in our adversarial system. Where a question of law exists and it requires a finding, it is a judge's job to do that. That's the thrust of our appeal. We are asking the court to do what the law requires it to do, where there are no disputes in the record about the physical condition of a piece of property. That is to find, as a matter of law, whether or not there is a duty. In this case, that is determined by the delivery and counter exception. I can't put it any other way than to say if it is a question of law, the court must make a finding. We are asking the court to do that. A couple of quick notes on what Mr. Rossak said. I only spoke for five minutes. The plaintiff's testimony was in response to that question. Again, that testimony did not provide any information about this particular grasp. We would encourage the court to make a finding in light of that testimony if it is inclined to go past the summary judgment record. Plaintiff's counsel invoked Marshall, mentioned Marshall in his brief. This court just found last month in Hertz that a grass parkway, where there was no evidence in the record that the grass parkway was dangerous, was a reasonably alternative path, could not invoke the delivery and counter exception because that grass parkway was available. The court just held that in Hertz. The fact that there is bio-organic material in our world that does not exist on a perfect plane does not create an auto dispute every time a grass parkway is available for someone to walk across. People are expected to use them when they're safe in order to do things like access their mail. That's literally what Marshall held. We think Rathsack mentioned the post-trial order, could have mentioned the summary judgment order too. The court there found, and I think Justice Kinect was hinting at this, that a reasonable jury could find there could have been all manner of concerns in the grass that Ms. Gardner might have wanted to avoid because of that. I mentioned this in our initial argument. That's not what Ms. Gardner said. The court has Ms. Gardner's testimony. It has her own admissions about why she didn't go through the grass parkway. The lower court's presumptions about why she might have wanted to avoid the grass parkway. It doesn't jive with the record. In fact, it contradicts the record because Ms. Gardner very candidly admitted she only avoided that grass parkway because you dangerous condition was more convenient. As I've said, Winters, Crespo, and Davis say that's not enough. Unless there are any other questions, I would include by asking the court to step in, find there's an issue of law here, and as a result, do what is required in instances where there are issues of law and make a legal finding. If that cuts against us, then so be it. But as we brief, that merits questions heavily avoided by plaintiff. It doesn't address Winters, Crespo, and Davis. She misstates the law that comes from the fever. She ignored a case called Hastings and cases that come through it that have articulated how that deliberate counter-exception has developed. Plaintiff really wants this to be a question fact. The city submits it's not. It's a legal question and the court should reverse and enter judgment to the city as a result because there was no on the city. Thank you for your time. All right. Thank you, Mr. Sotos. Thank you both. The court will take the case under advisement and will issue a written decision.